UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSE NORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 03 C 4923 |
| v. | ) |
| | ) Judge George M. Marovich |
| ANTHONY J. PRINCIPI, Secretary, | ) |
| Department of Veterans Affairs | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rose Norris ("Norris") filed a complaint against Anthony Principi ("Principi"), the Secretary of the Department of Veterans Affairs. In her complaint, Norris asserted claims for (I) disparate treatment and failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"); (II) intentional infliction of emotional distress; (III) retaliation in violation of Title VII of the Civil Rights Act of 1964; (IV) hostile environment harassment in violation of the ADA; and (V) breach of contract. Defendant has moved for summary judgment. Also before the Court is plaintiff's motion for leave to amend her complaint and her motion for leave to file instanter. For the reasons set forth below, the Court grants plaintiff's motion for leave to file instanter, denies plaintiff's motion for leave to amend her complaint and grants defendant's motion for summary judgment.

**I.    Background**

The following facts are undisputed unless otherwise noted.[1]

---

[1]Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces the rule strictly. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). Facts that are submitted but do not conform with the rule are not considered by the Court. For example, facts not included in a party's Statement of Material Facts or in a party's Statement of

Norris began working for Lakeside Veterans Affairs Hospital (the "Hospital") in 1980. Over the course of her employment with the Hospital, Norris filed at least three Equal Employment Opportunity ("EEO") complaints.

From 1980 to 1988, Norris worked as a medical technologist in the Microbiology laboratory. During those years, Norris was supervised by Eileen Mathews ("Mathews"). Norris filed an EEO complaint regarding Mathews in 1988, when Mathews allegedly preselected someone to replace herself in the position she was resigning.

After Norris filed her 1988 EEO complaint, Norris received a new supervisor. Beginning in 1988, Lola Sims ("Sims") supervised Norris as Norris continued to work in Microbiology. Sims disciplined Norris a few times. For example, in 1990, Norris failed to file certain reports while she was out of the office with bronchitis. Norris assumed her supervisor would file the report, but, instead, her supervisor gave Norris two letters of admonishment for not filing the

---

Additional Facts are not considered by the Court because to do so would rob the other party of the opportunity to show such facts are disputed. In this case, for example, facts either party included in its/her briefs but not in its/her Rule 56.1 statement of facts are **not** considered by the Court because the other party had no opportunity to controvert the facts. Furthermore, the Court will not comb the record searching for issues of fact (or the lack thereof). Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. Finally, where one party supports a fact with admissible evidence and the other party denies the fact without the support of admissible evidence, the fact is deemed admitted.

     Defendant asks the Court to strike the affidavit of Paul San Pedro ("San Pedro"), because plaintiff failed to disclose him in discovery as a person with knowledge. Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Defendant has put forth evidence that it requested in discovery the names of individuals with knowledge and that plaintiff failed to disclose San Pedro. The failure is not harmless. Accordingly, the Court will not allow plaintiff to use San Pedro's affidavit to support her motion for summary judgment.

reports. Sims also "wrote up" Norris for giving another employee improper directions for mixing acid. Because of the improper directions, the other employee was severely burned in an explosion. At some point (the time is unclear from the record), Norris filed an EEO complaint about the discipline to which Sims subjected her. Still, Sims remained Norris's supervisor.

Norris suffered a stroke on or about April 30, 1998 and stopped showing up for work. On June 22, 1998, Sims sent Norris a letter, which advised Norris that she needed either to report for work on June 30, 1998 or to submit a request for leave supported by documentation. It is unclear from the record when or how Norris advised the Hospital that she would be out of work for quite some time, but it is clear that she did not return to work until June 1999. In the meantime, the Hospital considered her absent without leave ("AWOL") for at least part of that time. Ultimately, the Hospital agreed to change her status to leave without pay ("LWOP") for the period of April 30, 1998 to June 30, 1999.

On or about June 1, 1999, Norris returned to work at the Hospital. Norris's doctor wrote a note saying that she could "perform light duty work for about 3-4 hours a day for approximately 4-6 weeks." Although Norris wanted to be assigned to the Urinalysis Department, the Hospital assigned her to the front desk of the chemistry department. There, Norris's job was to accept specimens dropped off by doctors and nurses.

In the chemistry department, Norris was supervised by Cheryl Murphy, but it was another supervisor with whom Norris had difficulties. Another supervisor in the area, Clara Lastre ("Lastre"), made comments to Norris while she worked in the chemistry department. In June 1999, Lastre made the following comments to Norris: "Hurry, you have to move faster,"; "You are so slow!"; and "What are you doing now?" Lastre also made derogatory comments to Norris and accused Norris of pretending to be disabled. Norris complained to Dr. Borensztajn about Lastre's comments. After Norris complained about Lastre to Dr. Borensztajn in early 2001,

Norris was transferred. Specifically, no later than February 1, 2001, Norris was transferred to the Hematology Department, which Lastre supervised. Lastre was not involved with the decision to transfer Norris to Hematology, and Lastre was unaware of Norris's previous EEO complaints. Lastre believed that Norris could perform the essential functions of her job without an accommodation.

Within a few months after Norris began working for Lastre, Norris triggered EEO proceedings. First, on April 24, 2001, Norris sought EEO counseling. Norris filed a formal EEO complaint on June 15, 2001. In that complaint, Norris asserted that Lastre subjected her to harassment and retaliation. Norris testified that Lastre: remarked that Norris was pretending to be disabled; failed to allow Norris to use a step stool and a telephone; disallowed Norris to put her initials on a report; disallowed Norris to talk to secretaries; told Norris to read slides 100 times; harassed her three times when Norris was trying to eat lunch; and followed her to the restroom and told her to move faster. Norris's EEO claim was tried before an Administrative Law Judge at the EEOC, and her claim was denied.

Norris continued to work in the Hematology Department at the Hospital until August 2003. At that point, Norris was transferred to the Hematology Department at West Side Hospital, where she continues to work.

In the meantime, Norris continued to seek medical treatment. Norris's doctor wrote three letters (in March, July and September 2001), in which he stated that Norris should not work in a "highly stressful environment." No record evidence establishes whether Norris ever supplied those letters to her employer. In September 2003, one of Norris's doctors wrote a letter in which he stated that Norris was "physically disabled."

According to Norris, the Hospital accommodated Brandell Norton–a phlebotomist–when he hurt his back by giving him light duty in the secretarial pool. The Hospital also accommodated Rebecca Bertermann by allowing her to work at home after she delivered twins.

II. **Summary Judgment Standards**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

III. **Discussion**

 A. **Plaintiff's motion to file instanter**

Local Rule 7.1 prohibits the filing of briefs in excess of 15 pages "without *prior* approval of the court." *See* Local Rule 7.1 (emphasis added). The Rule further provides that any brief "that does not comply with this rule shall be filed subject to being stricken by the court." *See* Local Rule 7.1. Here, the plaintiff has filed a 34-four page brief in opposition to defendant's motion for summary judgment. Instead of seeking *prior* approval for filing an excessively-long brief, the plaintiff moved to file *instanter* her 34-page brief. Although the Court could strike the

brief for failure to comply with Rule 7.1, the Court does not want to delay the case. Plaintiff's counsel should note, however, that in the future, the Court will strike any briefs longer than 15 pages that she files (in this or other cases) before receiving leave.

### B. Plaintiff's breach of contract claim

In Count V, plaintiff asserts that an employee handbook created a contractual relationship between plaintiff and defendant and that the defendant breached the contract.

Defendant argues that the claim should be dismissed for lack of jurisdiction because a district court has jurisdiction over a breach of contract claim against the government only if the claim is for less than $10,000. *See* 28 U.S.C. § 1346(a)(2) ("The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: . . . (b) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States . . .").

Plaintiff seems to appreciate the point, as she seeks leave to amend her complaint to change her prayer for relief. In her original prayer for relief for the breach of contract claim, plaintiff sought "compensatory, consequential and punitive damages in excess of five hundred thousand dollars ($500,000) . . ." Plaintiff would like to amend her complaint such that the prayer for relief for the breach of contract claim seeks "compensatory, consequential and punitive damages of less than ten thousand dollars ($10,000) for Defendants' breach of employment contract."

Generally, the Court allows amendments where justice so requires. *See* Fed. R. Civ. P. 15(a). In this case, however, the amendment would be futile. Even if the Court grants leave to

amend, the amendment will not bring the claim within the Court's jurisdiction because the plaintiff has failed to *waive* in a pleading her right to damages in excess of $9,999.99. *See McClendon v. Blount*, 452 F.2d 381, 383 (7th Cir. 1971). In other words, it is insufficient for plaintiff merely to demand less than $10,000. She must explicitly waive–in a pleading–any amount over $9,999.99. Because plaintiff's proposed amendment would not bring the claim within the Court's jurisdiction, the Court denies plaintiff's motion for leave to amend.

The Court lacks jurisdiction over Count V. Accordingly, the Court dismisses without prejudice Count V.

### C. Norris's emotional distress claim

In Count II, Norris asserts a claim for intentional infliction of emotional distress. Defendant argues that the Court lacks jurisdiction over Count II because it is preempted by the Federal Employees' Compensation Act ("FECA").

FECA is a federal employee's exclusive remedy against the government for work-related injuries. *Ezekiel v. Michel*, 66 F.3d 894, 898 (7th Cir. 1995). Under FECA, the "Secretary of Labor is vested with the power to 'administer, and decide all questions arising under' the FECA and the Secretary's action in denying or granting compensation is final, conclusive and not subject to review by a court of law." *Ezekiel*, 66 F.3d at 898 (citing 5 U.S.C. §§ 8128(b), 8145). If plaintiff's claim is for a work-related injury covered by FECA, then this Court has no jurisdiction over the claim. *Ezekiel*, 66 F.3d at 898.

The issue, then, is whether plaintiff's claim for intentional infliction of emotional distress is covered by FECA. If there is a substantial question as to whether FECA covers a claim, the Secretary of Labor must make the coverage decision. *Tippetts v. United States*, 308 F.3d 1091,

1094 (10th Cir. 2002) (because it was not clear whether plaintiff was performing work duties when his emotional distress claim accrued, there was substantial question over coverage, which the Secretary had to decide; *McDaniel v. United States*, 970 F.2d 194, 197-198 (6th Cir. 1992) (finding no substantial issue of coverage where Secretary had already concluded that plaintiff's intentional infliction of emotional distress claim was covered); *Rogers v. United States*, Case No. 03 C 3645, 2003 WL 22849148 at * 2 (N.D. Ill. Dec. 1, 2003). Several courts have concluded that a claim for intentional infliction of emotional distress is covered by FECA and, thus, that a district court has no jurisdiction over such a claim. *See Rogers*, 2003 WL 22849148 at * 2 ("While some questions remain regarding the extent of FECA's scope regarding emotional injuries, the Secretary of Labor has previously stated that FECA's scope includes emotional injuries."); *Trammel v. Brown*, Case No. 94 C 149, 1995 WL 708666 at * 4 (N.D. Ill. Nov. 30, 1995) ("The Secretary of Labor has determined that emotional distress falls within the coverage extended by the FECA, even for former federal employees who bring such actions."). Both *Rogers* and *Trammel* relied on *McDaniel* in determining that the Secretary of Labor had already concluded that FECA covers emotional distress claims. This Court agrees and concludes that it lacks jurisdiction over plaintiff's claim for intentional infliction of emotional distress.

It remains possible, however, that the Secretary would determine that plaintiff's *particular* claim for intentional infliction of emotional distress is not *covered* by FECA, i.e., is not the type of claim within the coverage of FECA. To be clear, this does not mean that plaintiff's claim is preempted *only* if she prevails on her FECA claim. Her intentional infliction of emotional distress claim is preempted *unless* the Secretary of Labor determines that the claim falls outside the coverage of FECA regardless of whether she actually prevails on her claim. *See*

*McDaniel*, 970 F.2d at 197 ("So long as the injury is of the type intended to be covered by FECA, the fact that no actual compensation was awarded is irrelevant.").

For these reasons, the Court concludes that it lacks jurisdiction over Count II and dismisses without prejudice Count II. The plaintiff is granted leave to reinstate this case (Count II) should the Secretary of Labor determine that her claim is *not covered* by FECA. (Should the Secretary conclude that the claim is covered but that Norris cannot prevail–because, for example, she lacks sufficient evidence to support the claim or she is not entitled to damages–then Norris does not have leave to reinstate the case because the claim would still be preempted.)

### D. Norris's employment discrimination claims

In Counts I, III and IV, Norris asserts employment discrimination claims, including disability discrimination, hostile environment harassment and retaliation. As defendant points out, much of the conduct plaintiff complains about is time-barred.

Pursuant to regulation, a federal employee who believes she has "been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must . . . initiate contact with a Counselor within 45 days of the effective date of the action." 29 C.F.R. § 1614.105. The requirement acts as a statute of limitations, and failure to comply with the requirement bars a federal employee from pursuing a discrimination claim under Title VII or the Rehabilitation Act. *Smith v. Potter*, 445 F.3d 1000, 1006-1007 (7th Cir. 2006); *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996); *Kruger v. Principi*, 420 F. Supp.2d 896, 906 (N.D. Ill. 2006).

In this case, it is undisputed that Norris sought EEO counseling on April 24, 2001. Thus, plaintiff cannot recover on any claims for acts whose effective date was prior to March 10, 2001, because those actions are time-barred. The time-barred actions include: 1) Norris's write-up for

giving another employee mistaken directions for mixing acid; 2) Norris's status as AWOL between June 1998 and June 1999; 3) Norris's assignment to the chemistry department instead of the urinalysis department in June 1999; and 4) Norris's transfer to the Hematology Department on February 1, 2001.

Norris argues, however, that her claims amount to a "continuing violation" and are, accordingly, timely. The Court disagrees. The Supreme Court has said that "discrete discriminatory acts [such as termination, failure to promote, denial of transfer, or refusal to hire] are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *National Passenger RR v. Morgan*, 536 U.S. 101, 113 & 114 (2002). There, the Supreme Court was considering when "employment practices" "occurred" for purposes of Title VII, but this Court thinks the analysis is also applicable when it considers the "effective date" of an employment "action" for purposes of 29 C.F.R. § 1614.105. *See Kruger v. Principi*, 420 F. Supp.2d 896, 906 (2006) (applying *National Passenger RR* to 29 C.F.R. § 1614.105). Norris's discrete acts (listed above) are time-barred. Norris also, however, asserts that she was forced to work in a hostile environment. Because a hostile environment constitutes a single claim, the claim is timely if any of the acts contributing to the hostile environment occurred within the limitations period. *National Passenger*, 536 U.S. at 117-118. Norris's hostile environment claim is not time-barred.

### 1. Plaintiff's Rehabilitation Act claim

In Count I, Norris asserts that she was discriminated against in violation of the Americans with Disabilities Act. Plaintiff, however, rightly concedes that, as a federal employee, she can bring her claim only under the Rehabilitation Act. *See Mannie v. Potter*, 394 F.3d 977, 982 (7th

Cir. 2005). Plaintiff asserts that she was subjected to disparate treatment due to her disability and that defendant failed to provide her a reasonable accommodation. These claims fail because plaintiff has failed to put forth sufficient evidence to withstand summary judgment on an essential element of these claims: that she is disabled.

The standards set out in the ADA are used in evaluating a claim under the Rehabilitation Act. *Dyrek v. Garvey*, 334 F.3d 590, 597 n. 3 (7th Cir. 2003); 29 U.S.C. § 794(d). In order to prevail on her failure to accommodate claim, a plaintiff must establish that: (a) she has a disability; (b) she is a qualified individual; and (c) defendant failed to provide a reasonable accommodation. *Basith v. Cook County*, 241 F.3d 919, 927 & 932 (7th Cir. 2001). In order to establish a *prima facie* case of disparate treatment under the Rehabilitation Act, the plaintiff must establish that: (a) she is disabled; (b) she is a qualified individual; and (c) she suffered an adverse employment decision under circumstances that suggest it was due to her disability. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). A common element of both of plaintiff's claims is that she be disabled, and that is the element on which her Rehabilitation Act claims fail.

The Rehabilitation Act defines disability as "a physical or mental impairment that substantially limits one or more major life activities," and a person is considered disabled for purposes of the Rehabilitation Act if she "is regarded as having such an impairment." 29 U.S.C. §§ 705(9), 705(20)(A). Major life activities are "those activities that are of central importance to daily life." *Toyota Motor Mfg. Ky, Inc. v. Williams*, 534 U.S. 184, 196 (2002). The EEOC lists

as major life activities "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).[2]

Substantially in the phrase "substantially limits" means "considerable" or "to a large degree." *Toyota*, 534 U.S. at 196. The plaintiff's impairment–in its corrected state–must be so limiting, relative to someone in the general population. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488-489 (1999); *Peters v. City of Mauston*, 311 F.3d 835, 843 (7th Cir. 2002). The standard for qualifying as disabled is "demanding," and the terms in the definition of disability "need to be interpreted strictly." *Toyota*, 534 U.S. at 197. To establish that they have a disability, plaintiffs must offer "evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Toyota*, 534 U.S. 198 (citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)). The "impairment's impact must be permanent or long term." *Toyota*, 534 U.S. at 198. Finally, a plaintiff must put forth evidence that she is so limited as of the time of the alleged discrimination, i.e., as of the time of the alleged failure to accommodate or the alleged disparate treatment. *See Vandeveer v. Fort James Corp.*, 192 F. Supp.2d 918, 935 (E.D. Wis. 2002).

Here, plaintiff fails to put forth evidence that she was disabled during the relevant time period. As the Court has already explained, the acts that occurred before March 10, 2001 are time-barred. To the extent plaintiff asserts that defendant failed to accommodate her after March 10, 2001 or subjected her to disparate treatment after that date, she cannot prevail because she has failed to put forth evidence that she was disabled during that time period. The only evidence

---

[2]The Supreme Court has noted that no agency was given authority to promulgate regulations interpreting "disability" and, hence, has not decided what deference the regulations deserve. Toyota, 534 U.S. at 194.

in the record that is relevant to the issue of whether plaintiff was disabled in March and April 2001 is as follows: 1) that on April 30, 1998 plaintiff suffered a stroke; 2) that on June 1, 1999, plaintiff's doctor wrote a note stating that she "could perform light duty work for about 3-4 hours a day for approximately 4-6 weeks"; 3) that in March, July and September 2001, plaintiff's doctor wrote letters saying that Norris should not work in a "highly stressful environment"; and 4) that in September 2003, one of Norris's doctors wrote a letter stating that she was "physically disabled." This is insufficient.

Nothing in the record constitutes evidence that Norris suffered an impairment that substantially limited her in a major life activity. Plaintiff does not even argue that any major life activity was substantially limited. Plaintiff rightly concedes that an inability to handle the stress of working with a particular supervisor does not constitute a disability. *Palmer v. Circuit Court of Cook Cty.*, 117 F.3d 351, 352 (7th Cir. 1997); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 (7th Cir. 1996).

Rather than arguing that she is substantially limited in a major life activity, plaintiff argues that she was regarded as such. Plaintiff is correct that she can establish she is disabled by establishing that she was regarded as being substantially limited in a major life activity. *See* 29 U.S.C. §§ 705(9), 705(20)(A) (a person is considered disabled for purposes of the Rehabilitation Act if she "is regarded as having such an impairment."). The record evidence relevant to the issue of whether defendant regarded Norris as being substantially limited with respect to a major life activity is as follows: 1) Lastre accused Norris of pretending to be disabled; 2) Lastre told Norris to move faster; 3) Lastre believed Norris could perform the essential functions of her job without an accommodation. The reasonable inference from this evidence is that Lastre did *not*

regard Norris as being disabled. No reasonable jury could conclude, based on this evidence, that Lastre (or any other of defendant's employees) regarded Norris as being substantially limited in a major life activity.

Because plaintiff has failed to put forth sufficient evidence from which a jury could conclude that she was disabled within the meaning of the Rehabilitation Act, she cannot recover on her claims for disparate treatment or for failure to accommodate. The Court grants defendant summary judgment on Count I.

### 2. Plaintiff's hostile environment claim

In Count IV, Norris asserts that she was subjected to a hostile work environment due to her alleged disability. The Seventh Circuit has assumed (because it has been able to decide such claims on other grounds) that a hostile work environment claim is cognizable under the Rehabilitation Act and the ADA. *Mannie*, 394 F.3d at 982. It has also assumed "that the standards for proving such a claim would mirror those we have established for claims of hostile work environment under Title VII." *Mannie*, 394 F.3d at 982. To survive summary judgment on a hostile environment claim, a plaintiff must put forth sufficient evidence to show: (1) she was subject to unwelcome harassment; (2) based on her membership in a protected class; (3) that the harassment was severe or pervasive so to alter the conditions of employment and create an abusive work environment; and (4) a basis for employer liability. *Williams v. Waste Mgt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004).

Plaintiff's claim fails on at least two of these elements. First, Norris cannot establish that she was harassed based on her disability if she does not have a disability. *See Holman v. Revere Electric Supply Co.*, Case No. 02 C 6351, 2005 WL 638085 at *10 (N.D. Ill. March 15, 2005),

*aff'd* 154 Fed. Appx. 501 (7th Cir. 2005). The Court has already concluded that Norris has failed to put forth sufficient evidence to create an issue of fact on the issue of disability. For this reason, she cannot survive summary judgment on her hostile environment claim.

Even if Norris were disabled, the Court would still grant summary judgment to defendant on the hostile environment claim because plaintiff has failed to put forth sufficient evidence of the third element, which requires that plaintiff show:

> either a tangible employment action, such as a discharge or demotion, or a non-tangible action, such as discriminatory conduct so severe or pervasive as to create an "abusive" working environment.

*Mannie*, 394 F.3d at 982. In *Mannie*, the Seventh Circuit affirmed summary judgment in favor of the employer because the alleged harassment–which included (1) supervisors who made derogatory comments about plaintiff and paged her to return from coffee breaks and (2) co-workers who discussed rumors about her mental stability and offended her by wearing tight-fitting clothing–was not sufficiently severe or pervasive. Similarly, Norris does not put forth sufficient evidence to survive summary judgment. The undisputed evidence is that between June 1999 and February 2001, Lastre (who was not plaintiff's supervisor at the time) made the following comments to Norris: (1) "Hurry, you have to move faster."; (2) "You are so slow!"; and (3) "What are you doing now?" During that time period, Lastre also accused Norris of pretending to be disabled. At some point after February 2001, Lastre: (1) again remarked that Norris was pretending to be disabled; (2) failed to allow Norris to use a step stool and a telephone; (3) disallowed Norris to put her initials on a report; (4) disallowed Norris to talk to secretaries; (5) told Norris to read slides 100 times; (6) harassed Norris three times when she was trying to eat lunch; and (7) followed her to the restroom and told her to move faster. This

evidence does not suffice. First, Norris concedes that she did not suffer a tangible job action, such as a termination or demotion. Second, the conduct, spread over several years, is not pervasive. Nor is it so severe as to make her work environment abusive. Federal employment laws are not general civility statutes, and no reasonable jury could conclude that Norris's work environment was abusive.

Plaintiff has failed to put forth sufficient evidence to withstand summary judgment on her hostile environment claim. Defendant is entitled to summary judgment on Count IV.

### 3. Plaintiff's retaliation claim

In Count III, plaintiff asserts a claim for retaliation. Where, as here, a plaintiff has no direct evidence of retaliation, she may proceed under the indirect method. To make out a *prima facie* case of retaliation, a plaintiff must show that: (1) after lodging a complaint about discrimination, (2) only she, and not any otherwise similarly-situated employee who did not complain, was (3) subjected to a materially adverse action which would dissuade a reasonable worker from making or supporting a charge of discrimination even though (4) she was performing her job in a satisfactory manner. *Burlington North'n & Santa Fe Railway Co.*, 126 S.Ct. 2405, 2415 (2006); *Treadwell v. Office of the Ill. Sec. of State*, ___ F.3d __, __, slip op. at 7 (7th Cir. July 27, 2006).

As explained above, the first problem with Norris's retaliation claim is that much of the conduct that she asserts as retaliatory is time-barred because she failed to seek EEO counseling within 45 days. *King v. Gonzalez*, Case No. 03-cv-126-PRC, 2005 WL 1175135 at * 14 (N.D. Ind. May 5, 2005); *aff'd* 2006 WL 1763468 (7th Cir. June 19, 2006) ("The district court concluded, however, that [plaintiff] had not exhausted his administrative remedies. His charge of

discrimination filed with the EEOC did not mention retaliation, and although he could have added to that charge he need to initiate the process within the agency by contacting an EEO counselor within 45 days of any supposedly retaliatory act. 29 C.F.R. § 1614.105(a)(1). The magistrate judge concluded that he missed this deadline . . . We substantially agree with the magistrate judge's analysis of this issue;"); *Arnold v. Newsome*, Case No. 02 C 8696, 2005 WL 994454 at * 12 (N.D. Ill. March 25, 2005) ("the first two acts of retaliation that allegedly occurred in 1999 are time-barred because they occurred more than 45 days before [plaintiff] contacted the EEO counselor."). Thus, as the Court explained above, the following acts are time-barred: 1) Norris's write-up for giving another employee mistaken directions for mixing acid; 2) Norris's status as AWOL between June 1998 and June 1999; 3) Norris's assignment to the chemistry department instead of the urinalysis department in June 1999; and 4) Norris's transfer to the Hematology Department on February 1, 2001.

Defendant argues that the actions that are not time-barred do not constitute adverse actions. The allegedly retaliatory conduct which is not time-barred is as follows: Lastre remarked that Norris was pretending to be disabled; Lastre failed to allow Norris to use a step stool and a telephone; Lastre disallowed Norris to put her initials on a report; Lastre disallowed Norris to talk to secretaries; Lastre told Norris to read slides 100 times; Lastre harassed Norris three times when Norris was trying to eat lunch; and Lastre followed Norris to the restroom and told her to move faster. These are actionable only if these are the sort of materially adverse actions that would have dissuaded a reasonable worker from making a charge of discrimination. *Burlington North'n*, 126 S.Ct. at 2415.

Each of these actions, however, strikes the Court as being petty slights that are not actionable retaliation. *Burlington North'n*, 126 S.Ct. at 2415 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. . . . And normally, petty slights, minor annoyances, and simple lack of good manners will not [deter employees from filing charges of discrimination]"). Norris has put forth no evidence from which a jury could conclude that these otherwise innocuous actions were somehow materially adverse in her case. Norris provides, for example, no evidence that her inability to use a step stool and telephone or her inability to talk to secretaries somehow made her job more difficult to perform. *Cf. Burlington North'n*, 126 S.Ct. at 2415-2416 ("A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."). Because Norris has failed to put forth sufficient evidence from which a jury could conclude that the alleged retaliatory acts were materially adverse actions, defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim. The Court grants defendant summary judgment on Count IV.

**IV.    Conclusion**

For the reasons set forth above, the Court grants plaintiff's motion (46) to file instanter. The Court denies plaintiff's motion (36) for leave to amend her complaint. The Court grants defendant's motion (24) for summary judgment. The Court dismisses without prejudice Counts

II and V. The Court grants defendant summary judgment on Counts I, III and IV. Case terminated.

The Court grants plaintiff leave to reinstate this case (Count II) should the Secretary of Labor conclude that plaintiff's claim for intentional infliction of emotional distress is not within the coverage of FECA.

ENTER:

George M. Marovich
United States District Judge

DATED:08/11/06